IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:13CR420 |
| vs. | |
| CHRISTOPHER D. BRACKETT, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the court on the defendant's, Christopher D. Brackett (Brackett), Motion to Suppress (Filing No. 25). Brackett is charged in a three-count Superseding Indictment with transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b) (Count 1), producing and manufacturing child pornography in violation of 18 U.S.C. § 2251(a) (Count II), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count III). **See** Filing No. 35 - Superseding Indictment. The defendant seeks to suppress all evidence, oral and tangible, obtained directly or indirectly from the September 17, 2013, search of 1904 Pleasantview Lane in Bellevue, Nebraska. **See** Filing No. 25 - Motion.

The court held an evidentiary hearing on July 8, 2014. Brackett was present with his counsel, Jeremy C. Jorgenson. The United States was represented by Assistant U.S. Attorney Michael P. Norris. The court heard the testimony of Bellevue Police Department (BPD) Detective Roy Howell (Detective Howell). The court received into evidence Detective Howell's affidavit and application for a search warrant, a search warrant, and a return and inventory form (Ex. 1) and an audio recording of the search from a device located on Detective Howell's person (Ex. 2). **See** Filing No. 70. A transcript (TR.) of the hearing was prepared and filed on July 14, 2014. **See** Filing No. 74. Brackett filed a post-hearing brief on July 21, 2014 (Filing No. 75). The government filed a response brief on July 28, 2014 (Filing No. 76), whereupon the matter was deemed submitted.

**BACKGROUND**

On September 17, 2013, Detective Howell received a call from a Nebraska State Patrol sergeant advising him to call Investigator Mike Gunias (Investigator Gunias) of the Cuyahoga Prosecutor's Office, in Ohio, regarding an Internet Crimes Against

Children tip (Ex. 1 – Aff. p. 4). Investigator Gunias informed Detective Howell a male named Christopher Brackett engaged in intercourse with and took sexually explicit photographs of a 16-year-old girl (RH) in Ohio and returned to Bellevue, Nebraska (Ex. 1 – Aff. p. 4-5; TR. 9).

RH and Brackett began communicating in May of 2013 while playing an online game and progressed to text messaging each other (Ex. 1 – Aff. p. 5). The number Brackett used to communicate with RH was 402.218.8111 (Ex. 1 – Aff. p. 5). Brackett introduced himself as Christopher Allen Brackett and told RH he lived in Omaha, Nebraska, was 36-years-old, had a truck and Jeep, and had a younger brother named Clint (Ex. 1 – Aff. p. 5).

In late June 2013, Brackett drove to Ohio to see RH (Ex. 1 – Aff. p. 5). RH noted Brackett drove a black Jeep SUV with a yellow leaf design on the side and Nebraska license plates (Ex. 1 – Aff. p. 5). RH stayed with Brackett at a local hotel for two nights and had sex with him (Ex. 1 – Aff. p. 5). While engaging in sex, RH asked Brackett to stop because he was hurting her (Ex. 1 – Aff. p. 5). However, the couple re-engaged in intercourse at the repeated requests of Brackett (Ex. 1 – Aff. p. 5). RH stated Brackett used his cell phone to take approximately four to five nude photos of RH (Ex. 1 – Aff. p. 5).

When RH attempted to break-up with Brackett in July 2013, Brackett became upset and threatened to tell RH's parents or send RH's nude photos to her parents (Ex. 1 – Aff. p. 5). Brackett then visited RH a second time in August 2013, driving a yellow Chevy Cavalier with black tinted windows and racing stripes (Ex. 1 – Aff. p. 5). RH and Brackett again engaged in intercourse, and Brackett took additional nude photos of RH (Ex. 1 – Aff. p. 5). Brackett told RH he moved the photos from his phone to a flash drive (Ex. 1 – Aff. p. 5, 7). RH stated she had voluntarily sent approximately forty nude photos to Brackett via text message (Ex. 1 – Aff. p. 6).

In mid-August, RH attempted to end her relationship with Brackett again (Ex. 1 – Aff. p. 6). In response, Brackett posted a Craigslist ad, for the Akron/Canton area, containing RH's address, cell phone number, and photo (Ex. 1 – Aff. p. 6; TR. 27-28). Prior to the ad's removal, RH received several calls from unknown individuals responding to the ad (Ex. 1 – Aff. p. 6; TR. 27-28). Brackett also threatened to post

additional Craigslist ads, erase RH's parents' social security numbers, have arrest warrants issued for her parents, and post the nude photos of her at her school (Ex. 1 – Aff. p. 6; TR. 27).

RH described Brackett as 5'11" to 6', 150 to 185 pounds with 1" dark hair (Ex. 1 – Aff. p. 6). Investigator Gunias showed RH a photo from the Nebraska Sex Offender Registry of Christopher Dwayne Brackett, date of birth July 25, 1977, which RH positively identified as the individual RH had sex with and who took nude photos of RH (Ex. 1 – Aff. p. 6; TR. 24-25).

Detective Howell took a number of steps to corroborate the information from Investigator Guinas. First, Detective Howell searched Brackett's name in the Nebraska Criminal Justice Information System and discovered Brackett uses an alias, Christopher Dwaune Allen Brackett (Ex. 1 – Aff. p. 6). Also, he identified Brackett's address on his Nebraska driver's license was 1904 Pleasantview Lane, Bellevue, Nebraska, and a black 2002 Jeep Grand Cherokee was registered to Brackett at that address (Ex. 1 – Aff. p. 6). Additionally, Detective Howell learned Brackett was a registered sex offender for having sex with a 15-year-old and videotaping the act (Ex. 1 – Aff. p. 6). Detective Howell also discovered Brackett had been convicted for failure to register as a sex offender in Douglas County, Nebraska, in February 2012, but now listed 1904 Pleasantview Lane, Bellevue, Nebraska, as his current address on the sex offender registry database (Ex. 1 – Aff. p. 6; TR. 23). Also, Brackett's cell phone number was registered to Angela Winters at that same address [1](Ex. 1 – Aff. p. 5). Moreover, Detective Howell confirmed Brackett has a brother named Clint (Ex. 1 – Aff. p. 6). Finally, Detective Howell discovered a police report filed against Brackett, by a female victim (DF), alleging he had made false Craigslist postings on her behalf as well (Ex. 1 – Aff. p. 6; TR. 25).

On September 17, 2013, before Detective Howell applied for the search warrant, Investigator Gunias seized RH's cell phone and informed Detective Howell RH was receiving text messages from Brackett's cell phone number (Ex. 1 – Aff. p. 6). That same day, Detective Howell applied for and received a search warrant for images of child pornography on any digital device or evidence of Brackett's occupancy or control

---

[1] The affidavit identifies Lindyview Lane as Angela Winters' address, instead of Pleasantview Lane; the government represents the difference as a typographical error.

of 1904 Pleasantview Lane, Bellevue, Nebraska (Ex. 1 – Search Warrant).  The warrant allowed officers to search the premises of 1904 Pleasantview Lane, Bellevue, Nebraska, any vehicles located on the premises, and Brackett's person (Ex. 1 – Search Warrant).

The information Detective Howell included in the affidavit concerning RH and DF was based solely on statements by the victims to officers other than Detective Howell (TR. 24-26).  The affidavit does not include any information showing Detective Howell had confirmed Brackett was actually in Nebraska or had crossed state lines with the pornographic images:  the fact Brackett returned to Nebraska with pornographic images is instead assumed (TR 22-23).

At approximately 7:00 p.m., on September 17, 2013, Detective Howell and other BPD officers executed the search warrant on 1904 Pleasantview Lane, Bellevue, Nebraska (TR. 8-9).  As the officers approached the residence, Detective Howell witnessed three individuals in the driveway of 1904 Pleasantview Lane, Bellevue, Nebraska (TR 10, 11, 32-33).  One of the individuals entered the garage through the open car-port door (TR. 10, 11).  Detective Howell and another officer pursued the individual into the home, with their guns drawn, by entering the garage through the open car-port door and an ajar door from the garage into the home; the officers did not knock (TR. 11-12, 19, 28, 31, 33; Ex. 2).  The officers entered a hallway with a half-wall separating them from a make-shift bedroom (TR. 12-13).  The officers could immediately see a man on the far side of a bed in the makeshift bedroom (TR. 12-13).  Detective Howard announced he was a police officer and handcuffed the man, identified as Brackett, as the scene was secured (TR. 12, 28; Ex. 2).

Detective Howell identified "we have a search warrant here for you . . . ," but would not explain what it was for until the home was secured (Ex. 2).  Prior to Detective Howell explaining the warrant, Brackett stated he had an iPhone in response to a question from Detective Howell (Ex. 2; TR. 13-14, 17).  An AT&T Apple iPhone 5 was among the items seized during the search (Ex.1 – Return and Inventory; TR. 14).  After Detective Howell told Brackett he was not under arrest and was only cuffed for everyone's safety while the house was secured, Brackett responded his bedroom was upstairs to another of Detective Howell's questions (Ex. 2; TR. 13, 17)

Also present during the search were Brackett's brother, Clinton R. Christy (Christy), and Christy's friend, Joshua E. Crosbie (Ex. 2). Christy advised the officers the basement bedroom was Brackett's.

After the house was secured, Detective Howell un-cuffed Brackett and informed him the officers had a warrant to search the residence for digital evidence (TR. 14, 29; Ex. 2). Detective Howell notified Brackett "[inaudible] . . . you've been communicating with a girl in Ohio. Are you aware of that?" (TR. 14; Ex. 2). Brackett responded "uhh, yes I am" (TR. 14; Ex. 2). Detective Howell then said "ok, well we would like to talk to you about it. Would you like to talk about it?" (TR. 14; Ex. 2). Brackett initially agreed to talk to Detective Howell but then refused when Detective Howell told Brackett he was going to advise Brackett of his rights under *Miranda* (TR. 14-15; Ex. 2). Detective Howell advised Brackett he was free to leave but could not take anything from the residence (TR. 15; Ex. 2). Brackett preceded to leave the residence and walked down the street (TR. 15).

## ANALYSIS

### A. Sufficiency of the Affidavit

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, Search & Seizure § 3.7(d) at 412 (4th ed. 2004). When reviewing the sufficiency of an affidavit "[a] totality of the circumstances test is used to determine whether probable cause exists. Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013). "[J]udges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." *Hager*, 710 F.3d at 836. "Probable cause is established when there is a fair probability that the object of the search warrant may be found in the place to be searched." *United States v. Romo-Corrales*, 592 F.3d 915, 919 (8th Cir. 2010) (internal quotation omitted).

As the Supreme Court stated in *Illinois v. Gates*:

5

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). Courts provide "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009).

The court finds the affidavit contained probable cause that images of child pornography of RH on digital media storage devices would be found at 1904 Pleasantview Lane, Bellevue, Nebraska. The information RH provided Investigator Gunias who related the information to Detective Howell is reliable. **See** *United States v. Singer*, 687 F.2d 1135, 1146 n.19 (8th Cir. 1982) on reh'g, 710 F.2d 431 (8th Cir. 1983) ("When the source of information is an ordinary cooperative citizen, the proof-of-veracity rules which obtain in informant cases are inapplicable, and the information received is presumed reliable."); **see also** *United States v. Jones*, 471 F.3d 868, 874 (8th Cir. 2006) (affirming the validity of a warrant even though "a detective other than the affiant [was] the source of the information in the affidavit"). There is no reason to question RH's reliability. To the extent there is hearsay in the affidavit, "a warrant may be based on hearsay[.]" *Illinois v. Gates*, 462 U.S. 213, 278 (1983); **see also** *United States v. Ventresca*, 380 U.S. 102, 108 (1965) ("[A]n affidavit may be based on hearsay information . . . so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions and his belief that any informant involved . . . was credible or his information reliable[.]") (internal quotation marks omitted); *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) ("[T]here is no requirement that an affiant have first-hand knowledge of every allegation he includes in his affidavit.").

6

In addition to the reliability of RH's information, Detective Howell's investigation corroborated RH's information. Detective Howell confirmed the number Brackett used to contact RH was registered to a Nebraska address. Additionally, Brackett's license and registration for his black Jeep listed the same Nebraska address. Detective Howell also confirmed Brackett had a brother named Clint. Lastly, Investigator Gunias had RH's cell phone and was receiving text messages from Brackett which confirmed Brackett's contact with RH. Analyzing the totality of the circumstances, and providing appropriate deference to the issuing judge's determination, the court finds there was a fair probability that images of RH would be found at Brackett's residence.

The court also finds there is a nexus between the alleged contraband, child pornography of RH on digital media storage devices, including Brackett's cell phone, and the place to be searched, Brackett's residence. There is a reasonable inference Brackett would keep such images in his home. **See United States v. Chase**, 717 F.3d 651, 653 (8th Cir. 2013) cert. denied, 134 S. Ct. 975 (2014) ("[T]he observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases.").

Assuming, *arguendo*, Detective Howell's affidavit was insufficient, the evidence seized remains admissible under the **Leon** good faith exception. "Under the **Leon** good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." **United States v. Patten**, 664 F.3d 247, 251 (8th Cir. 2011). There are four circumstances that preclude a finding of good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

**United States v. Cannon**, 703 F.3d 407, 412 (8th Cir. 2013).

The BPD's reliance on the search warrant was objectively reasonable. The court finds there is no evidence Detective Howell misled the issuing judge or provided false information known to be false. There is no evidence the issuing judge abandoned his role or that the warrant was facially deficient or so lacking in probable cause as to make belief in the warrant entirely unreasonable. The court finds the affidavit was not so deficient in probable cause to render belief in it unreasonable nor so deficient a reasonable police officer would presume it to be invalid. Accordingly, the **Leon** good faith exception would be applicable to this case.

### B. Execution of the Search Warrant

Brackett asserts the officers executing the search warrant violated the principle of "knock and announce" as incorporated in the reasonableness requirement of the Fourth Amendment enunciated in **Wilson v. Arkansas**, 514 U.S. 927 (1995). The rule serves three interests. It protects the privacy and dignity of homeowners, it allows the homeowner to safeguard his property by answering the door before its is broken down, and it protects both the police and those in the house from harm, since "an unannounced entry may provoke violence in supposed self-defense by the surprised resident." **Hudson v. Michigan**, 547 U.S. 586, 594 (2006). However, the knock and announce rule does not apply when police enter the home through an open door. **United States v. Mendoza**, 281 F.3d 712, 716-17 (8th Cir. 2002); **United States v. Philips**, 149 F.3d 1026 (9th Cir. 1998). Nor is there such a requirement when there is reason to believe evidence could be destroyed when the occupant is aware of the police presence.

In this case the officers arrived at the residence and observed individuals, including Brackett, outside the garage and observed Brackett enter the house through an open garage door (TR. 11). The officers were concerned about being observed as they approached the house and the possible destruction of evidence. Some of the officers followed Brackett through the open garage door and observed an inside door partly ajar and called out "Christopher, where you at?" (Ex. 2). The officers observed Brackett and detained him. Meanwhile, other officers approached other entrances to

the house, knocked and announced "Police Department - search warrant!" before entering those portions of the house (Ex. 2).

The court finds the officers did not violate the knock and announce requirement in serving the search warrant. They entered through an open door, albeit the garage door, and immediately followed up by entering an inner door which was ajar after announcing "Christopher, where you at?" Furthermore, officers subsequently entering other portions of the residence clearly announced "Police Department - search warrant!"

Assuming, *arguendo*, the knock and announce requirement was violated, such violation does not require the suppression of the evidence seized during the execution of the search warrant. The Supreme Court has held the exclusionary rule does not apply to violations of the knock and announce requirement of the Fourth Amendment. *Hudson*, 547 U.S. at 594-95; *United States v. Gaver*, 452 F.3d 1007, 1008 (8th Cir. 2006). Brackett's motion to suppress evidence including any statements based on any alleged violation of the knock and announce requirement is without merit.

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that**:

Brackett's Motion to Suppress (Filing No. 25) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 15th day of August, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge