IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:13CR420 |
| vs. | |
| CHRISTOPHER D. BRACKETT, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on Christopher D. Brackett's ("Brackett") pro se[1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 151). The Court has reviewed Brackett's motion, the parties' submissions, and the balance of the record in this case and concludes the motion should be denied. Because the record conclusively demonstrates Brackett is not entitled to relief, no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

I.  **BACKGROUND**

In May 2013, Brackett, then a thirty-six-year-old registered sex offender[2] from Nebraska, began communicating with R.H., a sixteen-year-old girl from Ohio, while playing an online video game. Brackett and R.H. eventually exchanged phone numbers

---

[1]On September 1, 2018, long after any reply to the government's opposition to Brackett's § 2255 motion was due, Brackett sent the Court a letter (Filing No. 159) describing the difficulty he had preparing his motion because he had limited access to legal resources in prison. In light of Brackett's request for "professional help" in preparing his § 2255 motion, the Court has construed his letter as a motion to appoint counsel. *See* 18 U.S.C. § 2255(g). That motion is denied. The Court is not persuaded the interests of justice require appointing counsel in this case to assist Brackett with the straightforward claims he raises. *See* 18 U.S.C. § 3006A(a)(2)(B); *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997) (listing factors to consider).

[2]When he was twenty-five, Brackett was convicted of sexual exploitation of a minor for videotaping himself engaging in unlawful sex acts with a fifteen-year-old girl.

and began texting and calling each other. Brackett told R.H. about himself, where he lived, that he had younger brother named Clint, and that he owned a Jeep.

In June 2013, Brackett drove his Jeep to Ohio to meet R.H. in person. He picked her up at her parents' house and took her to a local hotel where he persuaded her to have sex with him. Brackett took four or five nude photographs of R.H. with his cell phone. In July, R.H. tried to end the relationship but relented when Brackett became angry and threatened to tell her parents and send them the photographs.

Brackett returned to Ohio to visit R.H. in August 2013. They had sex again, and Brackett took more nude photographs at the hotel. R.H. also texted approximately forty nude images of herself to Brackett. Brackett told her he transferred the images from his phone to a flash drive.

Later that month, R.H. again attempted to end her relationship with Brackett. He threatened to make trouble for R.H.'s parents and grandfather and told R.H. he would send the photographs to her parents and post them at her high school. Brackett also posted advertisements on Craigslist in Ohio where R.H. lived, providing her personal information and indicating she was available for sex. R.H. received numerous calls and texts responding to the advertisements.

R.H. told her parents about Brackett, and they called the police. R.H. described Brackett and his vehicle and told them about the photographs. Investigator Michael Gunias ("Investigator Gunias") of the Cuyahoga County, Ohio, prosecutor's office showed R.H. a photograph of Brackett from the Nebraska Sex Offender Registry. She positively identified him as the man who took nude photographs of her and had sex with her. R.H. also gave officers her phone and authorized them to use her Facebook account. As the investigation moved forward, Brackett texted R.H. forty to fifty times.

On September 17, 2013, Investigator Gunias relayed the information R.H. had given about Brackett to Detective Roy Howell ("Detective Howell") of the Bellevue, Nebraska, Police Department. Detective Howell, a member of the Cyber Crimes Task Force, immediately began investigating Brackett and his background. Detective Howell was able to corroborate some of the information R.H. provided to the police, including that Brackett had a Jeep and a brother named Clint. Detective Howell also learned that another woman once reported that Brackett had posted false Craigslist advertisements like those R.H. described.

Later that day, Detective Howell obtained a warrant to search Brackett's residence and vehicles for digital media that could contain images of child pornography. The warrant application included a seven-page affidavit (1) describing Detective Howell's training and experience in child-pornography investigations; (2) setting forth R.H.'s allegations; and (3) summarizing the ongoing investigation. Officers executed the warrant that evening, seizing a smart phone, a laptop computer, and a desktop computer. The phone had been "wiped" and returned to factory settings, but the computers both contained sexually explicit images of R.H. A second phone—seized from Brackett when he was arrested—included additional explicit images of R.H. as well as the text messages between them.

On February 19, 2014, a federal grand jury returned a superseding indictment charging Brackett with transporting, producing, and possessing child pornography after having been convicted of an offense involving the sexual abuse of a minor. *See* 18 U.S.C. §§ 2252A(a), 2251(a), and 2252(a)(4)(B). Brackett moved to suppress the evidence seized from his residence, arguing the affidavit was insufficient to establish probable cause. The motion was denied.

At trial, Brackett asked the Court to reconsider its ruling on the motion to suppress and twice moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Brackett alleged the evidence presented at trial showed Detective Howell's affidavit omitted material facts and contained materially false statements. The Court denied the motions, concluding Brackett had "failed to prove recklessness or deliberate falsehood."

On January 23, 2015, a jury found Brackett guilty of all three counts. The Court sentenced him to 360 months in prison and 240 months of supervised release. On appeal, the Eighth Circuit affirmed the denials of Brackett's motion to suppress and his requests for a *Franks* hearing. *See United States v. Brackett*, 846 F.3d 987, 989 (8th Cir. 2017).

On May 24, 2018, Brackett timely moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. According to Brackett, his retained legal counsel was unconstitutionally ineffective[3] for failing to (1) "prepare or investigate"; (2) "show that false statements were included in the search warrant affidavit"; (3) "investigate and present mitigation evidence of [his] background and mental health"; (4) "discuss or present possible defenses"; and (5) "request additional time to examine and review Jencks material."[4] Brackett further complains his "counsel never turned over [Brackett's] client file." The government responds that Brackett is not entitled to any relief.

## II. DISCUSSION

### A. Standard of Review

Section 2255(a) authorizes a federal prisoner to seek post-conviction relief if his "sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

---

[3]The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 698 (1984).

[4]"The Jencks Act requires that the prosecutor disclose any statement of a witness in the possession of the United States which relates to the subject testified to by the witness on direct examination." *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992) (citing 18 U.S.C. § 3500(b)).

4

Relief under § 2255(a) "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). Review under § 2255 "is an extraordinary remedy and will not be allowed to do service for an appeal." *Jennings v. United States*, 696 F.3d 759, 762 (8th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

### B. Allegations of Ineffective Assistance of Counsel

Brackett raises five claims of ineffective assistance of counsel. "A defendant 'faces a heavy burden' to establish ineffective assistance of counsel pursuant to section 2255." *Deroo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *Apfel*, 97 F.3d at 1076). To prevail on his claims, Brackett must show his counsel's performance was both deficient and prejudicial to his defense in "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687 (explaining counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment").

Counsel's performance is deficient when—considering all the relevant circumstances—it falls "below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The Court's review of counsel's performance is highly deferential. *Id.* at 689. It applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In reviewing Brackett's claims, the Court makes "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice, Brackett "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not sufficient for [him] to show that the error had some

'conceivable effect' on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 693). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

### 1. Failure to Prepare and Investigate

Brackett first argues his counsel was ineffective for failing to hire an expert witness and failing to adequately investigate before trial. Both arguments fail. Brackett's first claim—that "the defense needed an expert witness for the reasons that similar cases hire experts"—establishes neither deficiency nor prejudice. Brackett offers no cogent explanation for why an expert was necessary or how hiring one would have changed the outcome of his case.

As to the alleged failure to investigate, Brackett's counsel had "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir. 1993). Such "decisions on what to investigate are accorded heavy deference." *Russell v. Jones*, 886 F.2d 149, 152 (8th Cir. 1989).

Brackett faults his counsel for failing to interview the government's witnesses before trial. As Brackett sees it, that failure left his counsel "ill-prepared for trial and [] unable to effectively cross examine" those witnesses. Assuming, for purposes of this motion, the government's witnesses (including the young victim) would have talked with Brackett's counsel, which is far from certain given the circumstances of this case, Brackett still fails to direct the Court to any specific information his counsel could have obtained by interviewing witnesses that he had not already received through pretrial discovery. *Cf. Kramer v. Kemna*, 21 F.3d 305, 308-09 (8th Cir. 1994). In the absence of

specific information showing counsel would have been better prepared for trial or his cross-examinations more effective if he had tried to interview government witnesses, Brackett's failure-to-investigate argument must fail. *See*, *e.g.*, *Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982).

### 2. Failure to Show False Statements in the Warrant Affidavit

Noting the Eighth Circuit rejected his argument that Detective Howell included facts in the search-warrant affidavit that he could not have known until after officers executed the warrant, Brackett argues his counsel was ineffective for failing to show "false statements were deliberately used in Detective Howell's affidavit, resulting in the [Eighth Circuit's] conclusion that the district court's denial of the Frank's [sic] motion was on an abuse of discretion." As the government points out, "[i]t is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)). To the extent Brackett attempts to relitigate the *Franks* claim that failed on direct appeal, the Court agrees with the government that "[h]e is precluded from raising this issue yet again on a motion seeking to vacate his conviction pursuant to 28 U.S.C. § 2255."

Brackett may, however, assert that his counsel was ineffective for failing to adequately argue the *Franks* issue before the district court and on appeal. *See Davis v. United States*, 673 F.3d 849, 852 (8th Cir. 2012). Indeed, Brackett very broadly argues his "counsel's ineffectiveness resulted in [his] lack of success on" the *Franks* issue. But Brackett again fails to provide any specific allegations or evidence to support his conclusory claims. For example, Brackett asserts "false statements were deliberately used in Detective Howell's affidavit, and counsel failed to adequately demonstrate that fact." Yet Brackett does not point to any purportedly false statements that were not already presented to and rejected by the trial and appellate courts, let alone any that might have been more successful than the arguments his counsel did present. "[C]ounsel's

failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam).

### 3. Mitigation Evidence, Possible Defenses, and the Jencks Act

Brackett's remaining arguments based on indeterminate mitigation evidence, unspecified defenses, and the prospect of "additional time to examine and review Jencks material" fare no better. Even if the Court could look past Brackett's "vague and conclusory allegations" of deficiency, *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986) (explaining such "allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255"), Brackett's motion and supporting memorandum are devoid of any argument or evidence to show his "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The government adduced overwhelming evidence of Brackett's guilt at trial. And Brackett has not met his heavy burden of showing "that there is a reasonable probability that, but for" his counsel's unreasonable failure to uncover some unspecified information hidden in his background or the Jencks materials and craft some unnamed (yet transformative) defense, the verdict "would have been different." *Id.* at 694; *see also Kramer*, 21 F.3d at 308-09.

### 4. Access to Brackett's File

Brackett last argues his counsel was ineffective because he "never turned over [Brackett's] client file." According to Brackett, he filed a "grievance to the state bar" but his counsel "has yet to turn over [his] case file." Brackett asserts he "is prejudiced because he cannot discover potential issues of merit when he has never seen his case file." The government responds Brackett's claim is too speculative to succeed. The Court agrees.

Brackett assumes there is some evidence of ineffective assistance somewhere in his file but neither provides any factual support for that assumption nor draws any plausible connection between the contents of his file and his ineffective-assistance

8

claims.  Brackett does not even provide a general description of what evidence he hopes to find in his file to support his claims.  "Habeas is an important safeguard whose goal is to correct real and obvious wrongs.  It was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'"  *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (*quoting Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996)); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."); Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts (imposing a good-cause requirement for discovery).

That Brackett was found guilty does not show that his counsel was unconstitutionally ineffective.

### C. No Certificate of Appealability

Brackett is unable to appeal the denial of his § 2255 motion without first obtaining a certificate of appealability.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The Court may issue such a certificate "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do that, Bracket must demonstrate "that jurists of reason could disagree with the [Court's] resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327. Upon careful review, the Court finds Brackett has not made a substantial showing of a denial of his constitutional right to counsel.  Therefore, the Court will not issue a certificate of appealability.

For the reasons stated above,

IT IS ORDERED:

1. Christopher Brackett's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Filing No. 151) and Motion to Appoint Counsel (Filing No. 159) are denied.
2. No certificate of appealability will issue.
3. A separate judgment in accordance with this Memorandum and Order will be entered this date.
4. The Clerk of the Court is directed to mail a copy of this Memorandum and Order and the Judgment to Christopher Brackett at the address of record for his current place of incarceration.

Dated this 7th day of September 2018.

BY THE COURT:

*Robert F. Rossiter, Jr.*
Robert F. Rossiter, Jr.
United States District Judge